NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

25-P-1068

JEANNETTE VIVAS

vs.

EZCATER, INC.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The plaintiff, Jeannette Vivas, filed a complaint against her former employer, EZCater, Inc. (EZCater), claiming retaliation under G. L. c. 149, § 105A (Equal Pay Act).  That statute prohibits retaliation against an employee because she "has inquired about or discussed the wages of any other employee."  G. L. c. 149, § 105A (c) (3) (iv).  A Superior Court judge allowed EZCater's motion for summary judgment.  On de novo review, see Banevicius v. Barnstable, 497 Mass. 585, 590 (2026), we affirm.

Undisputed facts showed that EZCater hired Vivas in February 2015 as a customer service agent.  In March 2021, at Vivas's request, EZCater transferred her to the information

technology department.  As part of her new role, Vivas obtained administrative password credentials to enable her to access company databases that are not available to all other employees. One such restricted-access database included a spreadsheet listing employee salaries.  On March 2, 2023, Vivas accessed the spreadsheet and noticed what she believed to be an inequity in her pay relative to a male colleague.  Through an instant message, Vivas discussed the compensation difference with another colleague, and considered speaking to supervisors, but acknowledged that she had to "tread lightly" or risked losing her database access privileges.

Vivas decided to speak to her interim manager and manager. Without revealing that she accessed the salary database, Vivas discussed the situation with her interim manager on March 17 and reported learning about salary inequities through a "conversation" with a colleague.  The interim manager drew her a diagram of the salary structure, and Vivas felt satisfied with the explanation.  Three days later, on March 20, Vivas broached the subject with her manager, and the manager echoed the interim manager's comments about the salary structure and assured Vivas that she was "going places" at EZCater.  She told the manager that she learned of the salary inequities through a conversation with a colleague -- once again not disclosing that she had accessed the salary database.

Based on the statement of undisputed facts, Vivas's undisclosed access of the database came to light on March 24, when a colleague reported to the manager that "Vivas had approached him and told him she had snooped into his salary and knew they made the same." After reviewing the login history, the manager verified that Vivas had accessed the salary database. The manager and interim manager then met with Vivas, and she admitted that she accessed the salary database. EZCater discharged Vivas.

We disagree with Vivas's contention on appeal that her conduct constituted protected activities under the Equal Pay Act. Her various challenges fail under the plain language of the governing statute as applied to the undisputed facts. First, EZCater did not discharge Vivas after disclosing, discussing, or inquiring about another employee's salary. See G. L. c. 149, § 105A (c) (3) (iv) (prohibiting retaliation). To the contrary, the record shows that both of her managers indulged her inquiries and took no adverse action whatsoever against her when she broached the subject of salary inequities. Instead, her discharge immediately followed the revelation that Vivas "violated her administrative privileges" by accessing the salary database and "lying" about it to her managers. Second, we read nothing in the Equal Pay Act that either expressly or implicitly prohibits employers from protecting their databases

3

from prying eyes even if the employer has not developed a policy that also authorizes disclosure through "prior written consent" of a subject employee.  G. L. c. 149, § 105A (c) (3).  See, e.g., G. L. c. 93H, § 2 (authorizing regulations to protect data "security and confidentiality of both consumer and employee information"); G. L. c. 266, § 120F (prohibiting knowingly accessing computer system without authorization); 201 Code Mass. Regs. §§ 17.01-17.05 (2009) (implementing G. L. c. 93H by requiring employers to protect databases containing certain personal information).

Finally, Vivas's pretext claim must fail given the undisputed sequence of events.  Following Vivas's inquiry about salary inequity, her manager assured her that she was "going places" at EZCater.  Adverse action did not begin to unfold until days later when a colleague reported that Vivas admitted to him that she "had snooped into his salary," and the investigation unearthed what had transpired.  On the record before us, Vivas cannot show that EZCater's "facially proper reasons given for its action against [her] were not the real reasons for that action" (citation omitted).  Bulwer v. Mount Auburn Hosp., 473 Mass. 672, 682 (2016).  Summary judgment

4

cannot be defeated by speculation.  See <u>Carroll</u> v. <u>Select Bd. of</u>

<u>Norwell</u>, 493 Mass. 178, 194 (2024).

<u>Judgment affirmed</u>.

By the Court (Meade,
  Hodgens & Allen, JJ.[1]),

Clerk

Entered:  July 8, 2026.

---

[1] The panelists are listed in order of seniority.